UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LITTLE KIDS, INC.,                     :
      Plaintiff,                    :
                        :
      v.                            :      C.A. No. 18-533WES
                        :
18th AVENUE TOYS, LTD.,                 :
HUTTON TOYS, LLC and                    :
YAACOV SCHWARTZ,                        :
      Defendants.                   :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Since September 25, 2018, Plaintiff Little Kids, Inc. ("Little Kids"), successfully[1] prosecuted a Lanham Act claim against Defendant 18th Avenue Toys, Ltd. ("18th Avenue"), based on alleged infringement of six of Little Kids' trademarks ("Trademarks") that protect its suite of bubble blowing toys.[2]  As these claims were being settled with a release of all claims and the entry by the Court of a permanent injunction, Little Kids became aware of facts that caused it to conclude that 18th Avenue, acting through its owner/chief executive officer, Yaacov Schwartz, had adopted a stratagem to undermine the settlement and avoid the Court's injunctions by continuing the infringement through the transfer of the infringing bubble blowing toys and related online images and advertising to what Little Kids believed was a related entity, Hutton Toys, LLC ("Hutton").  In response, Little Kids amended and supplemented its pleading with the

---

[1] Anticipating Defendants' reaction to my use of this adverb, I hasten to add that there has never been an admission or judicial finding of infringement.  Rather, my reference to Little Kids' "success" derives from the reality that the Court enjoined the alleged infringement, first entering a temporary restraining order, then repeatedly extending that restraining order and ultimately entering a permanent injunction.  ECF Nos. 10 & 27; Oct. 26, 2018 & November 14, 2018 Text Orders.  These are the injunctions that are at the heart of what is now in issue.

[2] The Trademarks protect the following terms: BUBBLE BUCKET®, BIG BUBBLE BUCKET®, BUBBLE TUMBLER®, BUBBLE TUMBLER MINI®, BUBBLE TUMBLER MINIS® and NO-SPILL®.  ECF No. 48 at ¶¶ 5-10.

Second Amended and Supplemental Complaint ("SASC").  ECF No. 48.  Now pending before

the Court are motions to dismiss the SASC brought by Hutton, 18th Avenue and Mr. Schwartz

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and (as to Hutton only) pursuant

to Fed. R. Civ. P. 12(b)(1-3) based on the lack of jurisdiction (both subject matter and personal),

as well as improper venue.  ECF Nos. 54 & 56.  The motions have been referred to me for report

and recommendation.  For the reasons that follow, I recommend that they be denied.

## I.   BACKGROUND[3]

### A.   Pre-SASC Litigation Between Little Kids and 18th Avenue

Formed in 1989, Plaintiff Little Kids is a Rhode Island corporation that manufactures

toys.  SASC ¶ 4.  Its principal place of business was in Rhode Island and now is in Seekonk,

Massachusetts.  Id. ¶ 1.  Since 1994, it has sold its suite of bubble blowing toys, including the

BUBBLE BUCKET®, under the protection of the Trademarks.  Id. ¶¶ 1, 4-10.

18th Avenue, the original Defendant, is a New York corporation located in Brooklyn; it

sells toys at a brick-and-mortar store named "Toys2Discover" and through a website named

Toys2Discover.com, as well as online through Amazon.  SASC ¶¶ 2, 15, 19, 24, 69; see

Schwartz Decl. ¶¶ 3-4.  Until January 2019, 18th Avenue owned a fleet of trademarked brands

---

[3] Because a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) restricts the Court to the content of the challenged pleading and the undisputedly authentic documents referred to in it, this background is largely drawn from the SASC and the documents referenced in it.  See Jefferson v. Bank of Am., N.A., No. CV 19-126 WES, 2020 WL 620247, at *2 (D.R.I. Feb. 10, 2020).  As required by the cases interpreting the Rule, all the SASC's well-pled factual allegations are taken as true.  Id. at *1.  Because the Hutton motion implicates Fed. R. Civ. P. 12(b)(1-3), which permits the Court to consider facts outside the pleadings, this background also references additional material, including the declarations of Shlome Knopfler (Knopfler Decl., ECF No. 55-1), submitted by Hutton, and of Mr. Schwartz (Schwartz Decl., ECF Nos. 32-1, 33-1), submitted by 18th Avenue, as well as the attorneys' representations of fact in the briefs and at oral argument.  See generally Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) (court can look beyond the pleadings on 12(b)(1)); Mansolillo v. F.D.I.C., Corp., 804 F. Supp. 426, 430 (D.R.I. 1992) (court can look beyond the pleadings on 12(b)(2)); Berklee College of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 211 n.49 (D. Mass. 2010) (court can look beyond the pleadings on 12(b)(3)).  In addition, the Court has taken judicial notice of matters of record reflected on the docket for this case.  Caraballo-Cecilion v. Marina PDR Tallyman LLC, No. 14-1454 (PAD), 2016 WL 6068117, at *4 n.8 (D.P.R. Oct. 13, 2016) (court may take judicial notice of its own docket).

for the toys it sold, including the trademark, "Top Right Toys." SASC ¶¶ 63, 65, 69. Mr. Schwartz (newly added as a Defendant by the SASC) is the owner and chief executive officer ("CEO") of 18th Avenue. Id. ¶ 110. Also employed at 18th Avenue until the end of 2018 when he left to join Hutton in connection, *inter alia*, with the transfer of the Top Right Toys brand, was Shlome Knopfler. Knopfler Decl. ¶ 13. According to an internet posting dated December 22, 2016,[4] Mr. Knopfler described himself as the "founder and CEO of Toys2Discover [18th Avenue's Brooklyn store]," a "large, growing, family-owned business." ECF No. 57-1 at 9.

Until March 2018, Little Kids sold its BUBBLE BUCKET® suite of toys to 18th Avenue for resale. SASC ¶¶ 16-17. After the termination of this buy-sell relationship, Little Kids alleges that 18th Avenue began to produce and sell bubble blowing toys under the Top Right Toy brand, intentionally using the Little Kids Trademarks and the photographs from Little Kids packaging and labels to confuse and deceive consumers into believing that 18th Avenue had been authorized by Little Kids to advertise and sell these toys ("Infringing Bubble Toys").[5] Id. ¶¶ 18-19, 22. Little Kids' demand that 18th Avenue cease and desist was ignored in that, after it was received by 18th Avenue, on September 7, 2018, Little Kids was able to purchase bubble blowing toys at 18th Avenue's Toys2Discover Brooklyn store that were marked with the Trademarks and trade dress so similar and sometimes identical to that of Little Kids as to be

---

[4] After Hutton filed the Knopfler Declaration in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), Little Kids attached a copy of this posting to its brief in opposition to that motion. ECF No. 57-1 at 6. The authenticity of this posting was not controverted in 18th Avenue/Hutton's joint reply. See ECF No. 58.

[5] Missing from the SASC but included in Little Kids' argument in opposition to Hutton's motion challenging personal jurisdiction is the additional factual allegation that 18th Avenue initially represented that it had purchased only 1,000 units of the Infringing Bubble Toys. ECF No. 57 at 3. However, when Little Kids examined the invoices and purchase orders produced by 18th Avenue, Little Kids discovered that this representation was untrue in that 18th Avenue had purchased 13,080 units of the Infringing Bubble Toys, as well as that the packaging stated falsely: "This product is designed in the USA by Top Right Toys Brooklyn NY USA." Id. (emphasis added). While Little Kids did not present a declaration to buttress this fact, the foundation for it was not controverted in 18th Avenue/Hutton's joint reply. See ECF No. 58.

likely to cause consumer confusion and deception with respect to the origin and source of the products.[6]  Id. ¶¶ 23, 30-31.  On September 25, 2018, Little Kids promptly filed this case, asserting four claims against 18th Avenue:

|         |                                                                                  |
|---------|----------------------------------------------------------------------------------|
| Count I:   | Federal Trademark Infringement                                                |
| Count II:  | False Designation and Representation of Services in Violation of Section 43(a) of the Lanham Act |
| Count III: | Dilution of Trademarks                                                         |
| Count IV:  | Common Law Trademark Infringement and Unfair Competition                       |

ECF No. 1.  For remedies, Little Kids asked for a temporary restraining order and preliminary and permanent injunctive relief ordering 18th Avenue to stop advertising and selling the Infringing Bubble Toys and to deliver up for impoundment and destruction such toys as were still in its possession, as well as for money damages, including punitive damages based on willful and deliberate infringement.  ECF No. 1 at 1, 9-11.

Within days of serving 18th Avenue with the complaint and summons, Little Kids filed a motion for temporary restraining order ("TRO") asking that 18th Avenue be enjoined from selling the Infringing Bubble Toys either at its Brooklyn store (Toys2Discover) or over the internet, as well as from using Little Kids' Trademarks "in any way on any product."  ECF No. 9 at 1.  The TRO motion also asked the Court to order 18th Avenue to deliver up "for impoundment all products offending [Little Kids's] trademarks in [18th Avenue]'s custody or

---

[6] Missing from the SASC but included in Little Kids' argument in opposition to Hutton's motion challenging personal jurisdiction is the additional factual allegation that, on receipt of the initial pre-litigation cease and desist demand, 18th Avenue represented to Little Kids that 18th Avenue would send a certificate of destruction as to all of the Infringing Bubble Toys and an assurance that "they did throw away almost all [infringing products] when they moved warehouses."  ECF No. 57 at 3.  Yet when Little Kids performed a visual inspection of 18th Avenue's Brooklyn-based Toys2Discover retail store on September 7, 2018, it was able to locate and buy some of the infringing products.  Id.  Pictures of these toys are attached to the SASC.  SASC ¶ 23 & Ex. G.  This discovery – permitting the inference that 18th Avenue lied when it provided pre-complaint assurances that the infringement had ceased – led to the filing of this lawsuit on September 25, 2018.  While Little Kids did not present a declaration to buttress this fact, the foundation for it was not controverted in 18th Avenue/Hutton's joint reply, except that they allege that it was a "mistake" to place the product on the Toys2Discover shelves.  See ECF No. 58 at 17.

4

control." Id. at 6. Following a hearing, and relying in part on 18th Avenue's "statement of non-opposition," the Court granted the TRO motion on October 18, 2018; through a series of extensions, the TRO remained in force through December 21, 2018.[7] See SASC ¶¶ 63-64 (referencing ECF No. 10). To comply with the TRO's impoundment mandate, 18th Avenue represented to Little Kids that all products containing the terms protected by the Trademarks had either been destroyed or were already in the possession of Little Kids.[8] Id. ¶¶ 64, 66.

Following the lapse of the TRO in December 2018 through July 2019, this case stalled while the parties litigated Little Kids' motion to dismiss 18th Avenue's counterclaim. See ECF Nos. 16-18; July 8, 2019 Text Order. During this period after the TRO's lapse, Little Kids accepted and did not question the truthfulness of 18th Avenue's representations that it had complied with the TRO's directive of impoundment and destruction, that it had no Infringing Bubble Toys left, and therefore there was no ongoing risk of infringement. See SASC ¶¶ 63-64, 66; ECF No. 57 at 4. As soon as the motion to dismiss was resolved in July 2019, the Court conducted the Rule 16 conference and in August 2019 referred the parties for court-annexed mediation to begin in October. See Referral August 14, 2019. In light of the impending court-annexed mediation, Little Kids largely ceased to pursue its factual investigation through

---

[7] The TRO was initially limited to a ten-day period. ECF No. 10 ¶ 5. An assented motion to extend the end date to November 9, 2018, was filed on October 25, 2018, (ECF No. 11) and granted by text order. Oct. 26, 2018 Text Order. A second assented motion for extension was granted, taking the TRO's effective ending date to November 21, 2018. ECF No. 12; Nov. 14, 2018 Text Order. Then, on November 29, 2018, instead of a motion, the parties filed a stipulation expressing their agreement that an "entry may be made" extending the TRO to December 21, 2018. ECF No. 13. Because the third extension was done by a stipulation, the Court was not alerted to the need to enter it by text order. Pointing to the lack of a text order, Hutton and 18th Avenue argued that the TRO actually lapsed in November 2018. ECF No. 55 at 5; ECF No. 56-1 at 8. While the Court does not credit this abnegation by 18th Avenue of its own stipulation, the end date of the TRO is not material to what is in issue now.

[8] Missing from the SASC, but included in Little Kids' argument in opposition to Hutton's motion challenging personal jurisdiction is the more specific factual allegation that, on November 21, 2018, 18th Avenue's attorney Christopher Niro, advised Little Kids that, "you now have the inventory that was remaining." ECF Nos. 57 at 4; 57-1 at 15. While Little Kids did not present a declaration to buttress this fact, that this representation was made, as well as the authenticity of the related document was not controverted in 18th Avenue/Hutton's joint reply. See ECF No. 58 at 17.

discovery in that it agreed to stay much of the discovery that it had propounded; one exception

was the interrogatory asking 18th Avenue to describe its ongoing relationship to the Top Right

Toys brand that had been at the center of the alleged infringement.  See ECF No. 59-1 at 1-6

(referencing stipulation between counsel to stay 18th Avenue's obligation to respond to specific

interrogatories until "a date to be determined after the Court's Settlement Conference scheduled

for October 4, 2019").  With 18th Avenue's August 2019 (false as it turned out) representation

that Top Right Toys was still one of 18th Avenue's brands, id. at 5, the parties engaged in court-

annexed negotiations that continued for most of the remainder of 2019 and culminated in the

agreement to settle described infra.

Throughout this period from December 2018 until December 20, 2019, Little Kids

alleges that it did not become aware of any facts to cause it to suspect that it was being

hoodwinked.  See SASC ¶¶ 60-61.

**B.    Factual Allegations Regarding 18th Avenue/Hutton Scheme to Continue Infringement and Evade Injunctions**

The SASC alleges that, in defiance of and to evade the TRO and a to-be-entered

permanent injunction, 18th Avenue, acting through Mr. Schwartz, for the purpose of

undermining the Court's injunctions and for his own benefit, SASC ¶¶ 63, 64, 75, turned to

Hutton,[9] a nearby New York limited liability company also doing business in Brooklyn, to aid

and abet 18th Avenue in continuing to advertise and sell the Infringing Bubble Toys.  See id. ¶¶

58-59, 64-76, 113-14.  The conduct on which the SASC focuses to buttress this allegation centers

on a January 2, 2019, transfer – very shortly after the TRO lapsed – by 18th Avenue to Hutton,

inter alia, of the rights to the Top Right Toys brand under which 18th Avenue had been caught

by Little Kids marketing the Infringing Bubble Toys.  Id. ¶¶ 18, 63, 65; see ECF No. 57-1 at 17-

---

[9] Hutton's owners (members) have not been disclosed.

6

20.  Little Kids alleges that, in connection with this transfer, 18th Avenue also delivered to Hutton the products, promotional material, artwork and packaging related to the Infringing Bubble Toys that had been covered by the TRO, aware that Hutton could use these materials in violation of the Court's injunctions.  SASC ¶ 115.  Other marks were included with the January 2, 2019, transfer to Hutton.  Id. ¶ 65.  Little Kids contends that 18th Avenue acted affirmatively to cover up this transfer, pointing to the August 28, 2019, interrogatory answer in which 18th Avenue, acting through its counsel, Christopher Niro (the same attorney who had filed the assignment of Top Right Toys in the U.S. Patent and Trademark Office just seven months before), inaccurately responded that, "Top Right Toys is one of Defendant, 18th Avenue Toys, Ltd.'s brands."  ECF No. 59-1 at 5.[10]

To support its conclusory allegation that 18th Avenue and Hutton are "alter egos and/or affiliates of one another or have some other close business relationship," SASC ¶ 73, Little Kids has assembled an array of factual circumstances surrounding this transfer of rights to Hutton that it contends collectively permit the inference that 18th Avenue and Hutton were and are intertwined in ways as yet unknown.  First, and most significant is that, coincident with the transfer, Mr. Knopfler, the 18th Avenue employee who (according to information proffered by Little Kids) was running the Toys2Discover store where the Infringing Bubble Toys continued to be sold after 18th Avenue duplicitously assured Little Kids that it had stopped,[11] left 18th

---

[10] 18th Avenue argues that this misleading interrogatory answer is cured by an objection it made to a document request for all documents concerning the Top Right Toys brand based on the availability to Little Kids of the public record of trademark registrations.  ECF No. 59-2 at 5.  It contends that, if Little Kids had investigated the public record, it would have learned that Hutton recorded the transfer on January 25, 2019.  ECF No. 57-1 at 17-20; Knopfler Decl. ¶ 12.  The Court observes that it is difficult to understand how such an objection cures a false interrogatory answer.

[11] The reader will recall that Mr. Knopfler had publicly described himself as the "founder and CEO of Toys2Discover," and had described that as "a large, growing, family-owned business."  ECF No. 57-1 at 9.  This uncontroverted fact should be read together with Mr. Schwartz's averment that he is the owner of 18th Avenue and that 18th Avenue owns the Toys2Discover store in Brooklyn.  Schwartz Decl. ¶¶ 2-3.  The reader will further recall

Avenue to become employed in an undisclosed capacity by Hutton.  Knopfler Decl. ¶ 13.

Second, Mr. Niro represented 18th Avenue in connection with the pending Little Kids case, as

well as with the transfer of the Top Right Toys brand to Hutton, including filing the registration

of assignment on January 25, 2019.[12]  ECF No. 57-1 at 17-20.  Following the transfer, Mr. Niro

continued as counsel to 18th Avenue, including signing the misleading interrogatory answer

averring that 18th Avenue had not transferred the Top Right Toys brand, and also began to act as

counsel to Hutton.  SASC ¶¶ 70-71; ECF No. 59-1.  Since, Mr. Niro has been representing both

18th Avenue and Hutton, including in connection with this case.  SASC ¶¶ 70-71.  Third,

following the transfer, 18th Avenue's Toys2Discover website continued to list some of the marks

that supposedly it no longer owned because they had been transferred to Hutton; these marks

were also listed by Hutton as its brands.  Id. ¶¶ 67-68.

　　　With these facts as background, the heart of the SASC rests on Little Kids' discovery (not

made until late December 2019) that, following the January 2, 2019, transfer and Mr. Knopfler's

switch from 18th Avenue to Hutton, while 18th Avenue and Little Kids were engaged in court-

annexed mediation to settle this case through the entry, *inter alia*, of a permanent injunction,

Hutton began to advertise the Infringing Bubble Toys for sale on various Amazon international

sites.  Id. ¶ 72; see ECF No. 37 at 7-8 & n.6.  Confirming that these infringing advertisements

had come from 18th Avenue, Hutton's international Amazon listings for sale of the Infringing

Bubble Toys included the same Seller Identification Number ("SIN") that 18th Avenue had used

for its Amazon listings of the Infringing Bubble Toys.  ECF No. 57 at 6.  Then, beginning at a

---

that it was on the retail shelves of Toys2Discover where Little Kids found the Infringing Bubble Toys in September 2018 after 18th Avenue had assured it that all such sales had ceased, which discovery led to the initiation of this case.

[12] Mr. Knopfler has averred that Mr. Niro was acting for Hutton when he recorded the assignments on January 25, 2019, Knopfler Decl. ¶ 12, while Mr. Schwartz avers that the January 25, 2019, registration was filed by "my counsel."  Schwartz Decl. ¶ 10.

point unknown to Little Kids and continuing at least until January 8, 2020, Hutton listed the Infringing Bubble Toys as if for sale on its Top Right Toys website, top-right-toys.myshopify.com.  SASC ¶¶ 60, 75-76, 78.  The Top Right Toys screen shots attached to the SASC reflect a button labelled "add to cart" under these offerings of the Infringing Bubble Toys, permitting the inference that they were being offered for sale.  Id. at Ex. H.[13]

Based on the inferences that may be drawn from these facts, Little Kids alleges that Hutton "acted in concert or participation with 18th Avenue its owners, officers or attorneys."  Id. ¶ 74.  In rebuttal, Hutton proffers the declaration of 18th Avenue's former/Hutton's current employee, Mr. Knopfler, who avers that Hutton is not owned by or affiliated with Mr. Schwartz or 18th Avenue, although Hutton products are sold in stores owned by 18th Avenue.  Knopfler Decl. ¶¶ 6-9.  As noted, however, Hutton does not disclose its owners.  On behalf of himself and 18th Avenue, Mr. Schwartz avers that Hutton and 18th Avenue are distinct legal entities, having no overlapping members/shareholders, officers, employees or accounts; that Hutton is not a parent, affiliate, dominant corporation or subsidiary of 18th Avenue; that he is not an officer, director, shareholder, employee or agent of Hutton, and that he and 18th Avenue have no power to control the actions of Hutton, including with respect to the Top Right Toys brand.  Schwartz Decl. ¶¶ 12-26.

C.      **Factual Allegations Regarding Execution of Settlement Agreement, Release of Claims, Entry of Permanent Injunction and Little Kids' Discovery of Alleged Scheme**

Unaware of the January 2019 transfer of Top Right Toys to Hutton and of Hutton's internationally-focused online advertisements of the Infringing Bubble Toys (and the infringed

---

[13] The Knopfler Declaration attempts to negate this inference with the averment that a shopper who clicked on "add to cart" would have received a message that the Infringing Bubble Toy was not available for purchase.  Knopfler Decl. ¶ 18.

Trademarks) using 18th Avenue's Amazon SIN, Little Kids entered into the court-annexed mediation with 18th Avenue to settle this case beginning in October 2019.  See Referral of Aug. 14, 2019.  These negotiations culminated in an agreement to the terms of a Confidential Settlement Agreement and Mutual Release on December 20, 2019 ("Settlement Agreement").[14] SASC ¶ 118.  On the same day, Little Kids discovered, it alleges for the first time, that Hutton was advertising the Infringing Bubble Toys on its website.  SASC ¶ 60.  At the time of this initial discovery, Little Kids had no reason to believe that Hutton had any relationship to 18th Avenue but began to investigate.  Id. ¶¶ 60-62.  With Little Kids still unaware of many of the facts (summarized *supra*) permitting the inference that 18th Avenue and Hutton were colluding, effective as of December 30, 2019, Little Kids and 18th Avenue entered into the Settlement Agreement.  Id. ¶ 118.

Four elements of the Settlement Agreement are material to what is in issue now.  First, the parties agreed that they would ask the Court to enter a permanent injunction barring 18th Avenue from selling, offering for sale or advertising the Infringing Bubble Toys, with the Court retaining jurisdiction "to enter such orders as the Court deems necessary."  SASC ¶ 119; ECF No. 34-2 at 3 ¶ 2.  Second, Little Kids and 18th Avenue agreed, if any of the Infringing Bubble Toys (all of which 18th Avenue warranted had been destroyed) were marketed, offered for sale or sold "directly or indirectly" by 18th Avenue, following notice and hearing, an escrowed judgment for a fixed sum[15] would enter.  ECF No. 34-2 at 3 ¶ 3; SASC ¶ 120.  Third, the Settlement Agreement provided that Little Kids released 18th Avenue and its officers,

---

[14] The Settlement Agreement is referenced in the SASC but not attached.  SASC ¶ 118.  Because its terms are confidential, an undisputedly authentic copy of it was filed under seal in connection with the Little Kids' motion to enforce.  ECF No. 34-2.  This document may be considered in connection with the Fed. R. Civ. P. 12(b)(6) motions, without converting them to motions for summary judgment.  Jefferson, 2020 WL 620247, at *2.

[15] In light of the Settlement Agreement's confidentiality, the Court uses "a fixed sum" instead of the actual amount in the escrowed judgment.

stockholders, attorneys, employees and affiliates (among others) from "any and all past and present claims," including "all known and unknown claims, which were asserted or could have been asserted in the Action as of the Effective Date [December 30, 2019]."  ECF No. 34-2 at 4 ¶ 6 ("Release").  Finally, litigation to enforce the Settlement Agreement is subject to "the exclusive and mandatory jurisdiction of, and venue in, the United States District Court for the District of Rhode Island."  Id. at 3 ¶ 1.  As required by paragraph 2 of the Settlement Agreement, the proposed permanent injunction was presented to the Court; this Order was signed on January 7, 2020, but was not issued by the clerk until 12:51 p.m. on January 8, 2020.  ECF No. 27.

Meanwhile, Little Kids' ongoing investigation of Hutton's online offering for sale of the Infringing Bubble Toys led it to conclude that Hutton and 18th Avenue, acting through Mr. Schwartz, were in cahoots.  SASC ¶¶ 62-63, 67-74; ECF No. 46 at 2-4 & n.2.  After discovering that Hutton's website linked to the site for Top Right Toys, where Hutton was still offering the Infringing Bubble Toys for sale as of 1:16 p.m. on January 8, 2020, an hour after the permanent injunction had entered, Little Kids acted swiftly.  It filed its motion to supplement the complaint (adding the more recent facts) and a separate motion for entry of the escrowed judgment on January 9, 2020.  ECF Nos. 28, 29.  Following a hearing on 18th Avenue's opposition to both motions,[16] Little Kids consolidated its allegations in the SASC, which was filed on May 22, 2020.  ECF No. 48.  In addition to the four original Counts against 18th Avenue, amplified to make clear that 18th Avenue had used the Top Right Toys brand to market and sell the Infringing Bubble Toys, the SASC adds: Counts V-VIII, accusing Hutton of federal trademark infringement, dilution of trademarks, and common law trademark infringement; Count IX, seeking to impose personal liability on Mr. Schwartz for the federal trademark infringement by

---

[16] With the filing of the SASC, the Court passed as moot the motion for entry of judgment and granted the motion to amend and supplement the complaint.  ECF Nos. 46-47; June 4, 2020 Text Order.

18th Avenue and Hutton; and Count X, seeking entry of the escrowed judgment for a fixed sum against 18th Avenue.

## II.   HUTTON MOTION TO DISMISS BASED ON LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

I begin the jurisdictional analysis by picking off the low-hanging fruit – Hutton's undeveloped argument pursuant to Fed. R. Civ. P. 12(b)(1) that the Court lacks subject matter jurisdiction over the claims against it. ECF No. 55 at 7-8. While Hutton concedes that Little Kids properly pled subject matter jurisdiction over the federal trademark claims (Counts V and VI) by invoking 15 U.S.C. § 1121, it argues that § 1121 subject matter jurisdiction does not stretch to include Little Kids' state law claims (Counts VII and VIII). Id. The problem, as Little Kids points out, is that 28 U.S.C. § 1367(a) permits the Court to exercise supplemental jurisdiction over such state law claims, when, as is alleged here, they are part of the same case or controversy. I recommend that the Court deny Hutton's motion to dismiss based on the lack of subject matter jurisdiction.

Hutton's more serious jurisdictional challenge rests on its argument that it is not subject to personal jurisdiction in the District of Rhode Island. Supported by the Knopfler and Schwartz Declarations, Hutton's Fed. R. Civ. P. 12(b)(2) presentation asserts that it is a New York entity whose legal address is in Brooklyn; that it has no offices or employees in Rhode Island; and that it sells toys online but its website (huttontoys.com) neither actively sells to nor targets Rhode Island customers. Knopfler Decl. ¶¶ 2-5, 19-20. Further, apart from conceding that it sells its products in stores owned by 18th Avenue, Hutton vigorously disputes Little Kids' allegations that Hutton and 18th Avenue are alter egos or that Hutton has an affiliation or business relationship with 18th Avenue. Knopfler Decl. ¶¶ 4-11; see also Schwartz Decl. ¶¶12-26. Focusing on Little Kids' allegations it was not just advertising (through the confusing use of the

12

Trademarks) but also was selling the Infringing Bubble Toys, Hutton avers that 18th Avenue did not transfer any of the Infringing Bubble Toys to Hutton and that Hutton has never sold the Infringing Bubble Toys, including in Rhode Island.  Knopfler Decl. ¶¶ 14-17.  While tacitly conceding that its Top Right Toys site displayed Infringing Bubble Toys with the Trademarks as if for sale, Hutton asserts that a consumer who clicked on the Top Right Toys "add to cart" button appearing in the screenshot attached to the SASC would have received a message informing the consumer that the product was not available for purchase.  Knopfler Decl. ¶ 18; SASC Ex. H.

Little Kids counters with alternative approaches, both aimed at establishing that there is specific personal jurisdiction to sue Hutton in the District of Rhode Island.[17]  First, it contends that Hutton's online advertising is enough for personal jurisdiction; and, second, it points out that the essence of its claim against Hutton is that, with notice of the Rhode Island litigation, the Rhode Island court-annexed mediation and the Rhode Island injunctions, Hutton knowingly entered into a scheme in active concert with 18th Avenue for the purpose of deliberately evading the authority of the Rhode Island Federal Court by continuing the infringement through a different entity.  ECF No. 57 at 9-13.  Viewed from these perspectives, Little Kids argues that its *prima facie* proffer rests on facts that, if proven, permit the inference that Hutton engaged in Rhode Island-targeted conduct that is more than sufficient to hale Hutton into Rhode Island, a forum where Hutton advertising could be viewed and that is the seat of the Court that presided over the litigation (including the court-annexed mediation) and issued the injunctions.  Id.

**A.** **Personal Jurisdiction and the *Prima Facie* Standard of Review**

---

[17] Personal jurisdiction comes in two forms – general and specific.  <u>GRE Prop. Invs., LLC v. Isanthes, LLC</u>, No. CV 20-054-JJM-PAS, 2020 WL 2616176, at *3 (D.R.I. May 22, 2020).  Little Kids does not rely on general jurisdiction and argues only that there is specific jurisdiction to sue Hutton in the District of Rhode Island.  ECF No. 57 at 8-13.

A "court must have personal jurisdiction over the parties to hear a case, that is, the power to require the parties to obey its decrees." AngioDynamics, Inc. v. Clarion Med. Techs., Civil Action No. 18-30038-MGM, 2019 WL 10787926, at *7 (D. Mass. Sept. 25, 2019) (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 617 (1st Cir. 2001)).  Rule 12(b)(2) tests the "Court's authority to exercise power over those subject to suit." GRE Prop. Invs., LLC, 2020 WL 2616176, at *2.  "The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." Baskin-Robbins Franchising, LLC v. Alpenrose Dairy Inc., 825 F.3d 28, 34 (1st Cir. 2016).

When the parties have not requested an evidentiary hearing, GRE Prop. Invs., LLC, 2020 WL 2616176, at *3, or when fact finding should be avoided because the jurisdictional facts are closely intertwined with the merits, Barry v. Mortg. Servicing Acquisition Corp., 909 F. Supp. 65, 69-70 (D.R.I. 1995), the court may rule on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing.[18] AngioDynamics, Inc., 2019 WL 10787926, at *7.  In such cases, the plaintiff must make a *prima facie* showing that personal jurisdiction exists.  United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 43-44 (1st Cir. 1993).  This *prima facie* method requires the plaintiff to proffer evidence "which taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins, 825 F.3d at 34.  To examine the merits of such a jurisdictional proffer, the Court takes "the facts from the pleadings and whatever supplemental filings (such as affidavits)[19] are contained in the record, giving credence to the plaintiff's version of genuinely contested facts."

---

[18] The two alternative methods – preponderance of the evidence and intermediary – both require an evidentiary hearing and some degree of fact finding.  Barry, 909 F. Supp. at 69-70.

[19] A better practice is for the additional facts to be supported by sworn declarations or affidavits.  In this case, Little Kids simply relied on representations in its briefs for many of the additional facts.  Because, as noted *supra* nn.4, 5, 6 and 8, Defendants did not challenge this approach, I have relied on these additional facts.

Id.  The court acts as a data collector, not a fact finder, <u>Foster-Miller, Inc. v. Babcock & Wilcox</u> <u>Can.</u>, 46 F.3d 138, 145 (1st Cir.1995), although it does not credit conclusory allegations, unproven assumptions, generalizations or farfetched inferences.  <u>Mass. Sch. of Law at Andover,</u> <u>Inc. v. Am. Bar Ass'n.</u>, 142 F.3d 26, 34 (1st Cir.1998).  That is, the court accepts properly supported proffers by a plaintiff as true and makes its ruling as a matter of law.  <u>United Elec.</u> <u>Radio & Mach. Workers</u>, 987 F.2d at 44.

In this case, the *prima facie* method is appropriate for two reasons.  First, the parties have not requested an evidentiary hearing.  To the contrary, both parties have acquiesced to Little Kids' reliance on the SASC and factual proffers buttressed by attached documents.  Second, the pivotal jurisdictional facts – whether Hutton's infringing online advertisements were posted in knowing concert with 18th Avenue and with actual notice of the Rhode Island litigation, the Rhode Island court-annexed mediation and this Court's injunctions – are deeply woven into the warp of the merits of Little Kids' claims against Hutton, 18th Avenue and Mr. Schwartz.

### B.    Analysis

To sustain its burden with respect to specific jurisdiction, Little Kids must demonstrate the existence of facts sufficient to satisfy both Rhode Island's long-arm statute – R.I. Gen. Laws § 9-5-33 – and due process "notions of fair play and substantial justice."  <u>Calabrese v. Argus</u> <u>Group Holdings Ltd.</u>, C.A. No. 14-463-ML, 2015 WL 3952724, at *3 (D.R.I. June 29, 2015) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).  Because R.I. Gen. Laws § 9-5-33 authorizes Rhode Island courts to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution, <u>Donatelli v. Nat'l Hockey League</u>, 893 F.2d 459, 461 (1st Cir. 1990), this Court need decide only whether the assertion of personal jurisdiction over Hutton follows due process principles.  <u>GRE Prop. Invs., LLC</u>, 2020 WL

2616176, at *3; see also Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (describing the three essential jurisdictional elements as relatedness, purposeful availment, and the gestalt factors). To satisfy due process, "the proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden v. Fiore, 571 U.S. 277, 290 (2014). While the court may consider the interest of the forum state and of the plaintiff, balanced against the burden and inconvenience of the defendant, at bottom, the suit must arise out of the defendant's contacts with the forum as "a consequence of the territorial limits on the power of the respective states." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1780 (2017) (quoting Hanson v. Denkla, 357 U.S. 235, 251 (1958)).

### 1. Specific Jurisdiction Based on Hutton's Sales and Advertising

First, Little Kids contends that, pursuant to the traditional due process analysis, Hutton's online advertising and sales contacts with Rhode Island are sufficient to satisfy the three-prong test of relatedness, purposefulness, and reasonableness. GRE Prop. Invs., LLC, 2020 WL 2616176, at *3. Citing Communico, Ltd. v. DecisionWise, Inc., Case No. 3:14-CV-1887 (RNC), 2018 WL 1525711 (D. Conn. Mar. 28, 2018), Little Kids points to Hutton's online postings of images of the Infringing Bubble Toys for sale on the top-right-toys.myshopify.com website, which it contends amounts to the solicitation of business wherever the website could be accessed, including from Rhode Island.[20]

---

[20] The Knopfler Declaration avers that huttontoys.com is passive and that the top-right-toys.myshopify.com "add-to-cart" button was disabled, controverting Little Kids' claim that Hutton was soliciting customers in Rhode Island for the Infringing Bubble Toys using the Trademarks and causing consumer confusion. Knopfler Decl. ¶¶ 18-19. The Court need not resolve this factual dispute. Even if Little Kids' proffer is accepted as true, it is insufficient as a matter of law.

There is a serious problem with this proffer: unlike the plaintiff in <u>Communico, Ltd.</u>, Little Kids has not found any evidence to suggest that Hutton actually sold an Infringing Bubble Toy in Rhode Island.  <u>See</u> 2018 WL 1525711, at *3 (critical to finding personal jurisdiction over non-resident infringer is proffer that at least one Connecticut resident, directly or indirectly through Amazon or Barnes & Noble, purchased infringing book).  In the Knopfler Declaration, Hutton vigorously denies that it has ever sold the Infringing Bubble Toys anywhere.  Knopfler Decl. ¶¶ 15-17.  More serious – indeed fatal – is Little Kids' failure to clear the bar created by the most recent controlling precedent from our Circuit, which holds that specific jurisdiction cannot be based on nothing more than maintenance of a website that can be viewed by and is interactive with users in the forum state.  <u>Chen v. U.S. Sports Acad., Inc.</u>, 956 F.3d 45, 60 (1st Cir. 2020).  In <u>Chen</u>, the defendant's interactive website could be accessed from anywhere in the United States, including from Massachusetts, and consumers (including two residents of Massachusetts) could and did purchase the educational services it offered.  <u>See generally</u> <u>id.</u>  Yet there were no facts demonstrating that after the plaintiff moved to Massachusetts, he dealt directly with the defendant, making it aware that he was continuing his online studies from Massachusetts through the website, or that the site targeted Massachusetts or that the site resulted in the defendant's knowing receipt of substantial revenue from Massachusetts residents.  <u>Id.</u>  Mindful of these deficiencies, the First Circuit held that maintenance of a national interactive website that is viewable within the forum, standing alone, is insufficient to satisfy the purposeful availment prong of the tripartite test as a matter of law.  <u>Id.</u> at 61-62.

<u>Chen</u> is dispositive – Little Kids' reliance on Hutton's online advertising fails to establish specific jurisdiction.

      2.     <u>Specific Jurisdiction Based on Rhode Island Court's Litigation and Injunctions</u>

Little Kids' alternative factual path to specific jurisdiction – focused on the Rhode Island-based infringement litigation, the Rhode Island court-annexed mediation and the Rhode Island Court's injunctions – is more promising.

First a factual recap: viewed through the *prima facie* lens, including not just the SASC, but also both the proffered facts and the inferences that flow from them, Little Kids has established that 18th Avenue's Toys2Discover Brooklyn store was run by Mr. Knopfler, permitting the inference that he was aware: (1) that 18th Avenue (falsely) told Little Kids all Infringing Bubble Toys had been disposed of when they were still being sold in the store Mr. Knopfler ran; (2) that this duplicity triggered the filing of a lawsuit in Rhode Island that sought, *inter alia*, a permanent injunction barring 18th Avenue (including its employees) from advertising or selling the Infringing Bubble Toys; and (3) that the Rhode Island lawsuit resulted in the entry of the Rhode Island TRO, which specifically banned the selling of the Infringing Bubble Toys at the Toys2Discover store Mr. Knopfler ran, as well as the impoundment of any Infringing Bubble Toys remaining in Mr. Knopfler's store.  When Mr. Knopfler left 18th Avenue as soon as the TRO lapsed to join Hutton in a capacity that afforded him firsthand knowledge of the Hutton facts to which he avers in his Declaration, his knowledge of the Rhode Island lawsuit, the Rhode Island TRO and the potential imminency of a Rhode Island permanent injunction went to Hutton with him.  This is more than sufficient to support the inference that Hutton, through Mr. Knopfler, acquired actual knowledge of these matters.  Also permitting the inference that Hutton's conduct in posting the Infringing Bubble Toys for sale online was engaged in with the knowledge of (and in defiance of) the Rhode Island Court's authority is Hutton's engagement of Mr. Niro, the same attorney who had been handling (and continues to handle) the Rhode Island litigation for 18th Avenue.

18

With these facts permitting the inference that Hutton acted with knowledge of the Rhode Island litigation and the Rhode Island Court's injunctions entered for the purpose of terminating infringing use of the Trademarks, Little Kids' proffer is sufficient to establish that Hutton and 18th Avenue continued to conduct business as if they were not just arms-length competitors (including Mr. Knopfler's switch from 18th Avenue to Hutton, as well as 18th Avenue's continuing to list some of the brands ostensibly transferred to Hutton as if it still owned them), providing factual support for Little Kids' allegation on information and belief that they "are alter egos and/or affiliates of one another or have some other close business relationship."  SASC ¶ 73.  More significantly, Little Kids' proffer demonstrates that, while 18th Avenue covered up by providing Little Kids with an inaccurate interrogatory answer, the Top Right Toys brand was transferred to Hutton, along with online images displaying the Trademarks and the SIN numbers 18th Avenue had used to sell the Infringing Bubble Toys.  With the TRO lapsed, 18th Avenue (represented by Mr. Niro) engaged in the Rhode Island-based court-annexed mediation culminating in Rhode Island's issuance of the permanent injunction, at the same time that Hutton (also represented by Mr. Niro) began using 18th Avenue's Amazon SIN to offer the Infringing Bubble Products for sale outside of the United States and to list the Infringing Bubble Toys for sale on Hutton's top-right-toys.myshopify website.

This is more than sufficient for a *prima facie* showing that Hutton, aware of the Rhode Island lawsuit and of the Rhode Island TRO, as well as of the likelihood that 18th Avenue might soon be constrained by a Rhode Island permanent injunction, knowingly and intentionally entered into a targeted and deliberate scheme to facilitate 18th Avenue's evasion of the authority of the Rhode Island Court.  The issue is whether this *prima facie* showing is enough to sustain specific personal jurisdiction.

a.      Specific Jurisdiction Derived from Nationwide Reach of
Fed. R. Civ. P. 65(d)

If Little Kids' claim against Hutton were for contempt of either the TRO or the

permanent injunction, it is well settled that Fed. R. Civ. P. 65(d) permits the court that issued the

injunction to exercise jurisdiction over a non-party that knowingly aids and abets a violation of

its order even though the non-party lacks other contacts with the forum.  Waffenschmidt v.

MacKay, 763 F.2d 711, 716-19 (5th Cir. 1985).  The rational for this exception is the nationwide

scope of Fed. R. Civ. P. 65 injunctions and the affront to the court issuing the injunction order,

coupled with the reality that the contempt proceeding must occur in the issuing jurisdiction.

Waffenschmidt, 763 F.2d at 716.  Due process is not offended despite the non-party's absence of

contact with the forum provided the non-party had actual knowledge of the order and acted in

concert with the party enjoined.  Chesterton Capital LLC v. Legacy Point Capital LLC, Civil

Action No. 16-10848-LTS, 2020 WL 823172, at *4 & n.12 (D. Mass. January 31, 2020) (citing

Sec. and Exch. Comm'n v. Homa, 514 F.3d 661, 673-75 (7th Cir. 2008)).  Its essence is that

defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors,

although they were not parties to the original proceeding.  G. & C. Merriam Co. v. Webster

Dictionary Co., 639 F.2d 29, 35 (1st Cir. 1980) (citing Regal Knitwear Co. v. N.L.R.B., 324 U.S.

9, 14-15 (1945)).

The problem, as Hutton points out, is that Little Kids is not proceeding under Fed. R. Civ.

P. 65(d) for contempt.  ECF No. 58 at 2.  Its claims against Hutton (Counts V-VIII) are for

federal and state law trademark infringement.  SASC at 9-15.  At least one court has rejected

personal jurisdiction grounded in Fed. R. Civ. P. 65(d) as stretching to encompass related

infringement claims.  See Franko Maps LTD v. Nielsen, Civil 16-00600 LEK-RLP, 2017 WL

4381669, at *12 (D. Haw. Sept. 29, 2017) (finding personal jurisdiction over non-parties only

with respect to enforcement of permanent injunction; "policies behind the personal jurisdiction analysis and a court's ability to enforce its injunctions nationwide do not support an extension of the Homa analysis to Plaintiff's affirmative [infringement] claims").  If the Court's specific jurisdiction analysis were to stop here, the Court should dismiss Hutton, without prejudice to an amendment by Little Kids to add a claim pursuant to Fed. R. Civ. P. 65(d) for contempt.

b.    Specific Jurisdiction Based on Conduct Directed at
       Evading the Power of the Rhode Island Court

What remains is whether a traditional due process analysis permits Hutton to be sued in Rhode Island, this time focused on whether Hutton's affirmative conduct (viewed through the *prima facie* lens) – bringing on Mr. Knopfler and the Top Right Toys brand, engaging Mr. Niro, launching the Amazon and Top Rights Toys online advertising of the Infringing Bubble Toys to evade the Rhode Island Court's injunctions, and scheming with 18th Avenue to render the Rhode Island Court's authority feckless – amounts to "conduct that connects [it to Rhode Island] in a meaningful way."  Walden, 571 U.S. at 290.

The first prong of the due process analysis – relatedness – is readily traversed.  Mr. Knopfler, began as an employee of 18th Avenue, running the Toys2Discover store whose sale of the Infringing Bubble Toys resulted in the Rhode Island Litigation and the Rhode Island TRO.  Mr. Knopfler's move to Hutton, together with the Top Right Toys brand, was timed to follow right on the heels of the lapse of the TRO.  Then, with discovery in the Rhode Island case largely suspended because of the Rhode Island-based court-annexed mediation, Hutton began its use of 18th Avenue's online advertising images (replete with the Trademarks) to offer the Infringing Bubble Toys for sale.  These intentional machinations are more than sufficient to establish that Hutton's conduct is related to Rhode Island in that it was timed and calculated to evade the known-to-it proceedings and injunctions in Rhode Island.  See Jenkins v. Miller, 983 F. Supp. 2d

21

423, 444-45 (D. Vt. 2013) (specific jurisdiction may be exercised over non-Vermont residents whose intentional tortious acts were committed outside of Vermont for the purpose of aiding and abetting avoidance of Vermont court order entered to protect Vermont resident).

Second is whether there is "purposeful availment"; that is, whether there is "any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable."  Sawtelle, 70 F.3d at 1391 (internal quotation marks omitted).  In this instance, the *prima facie* view establishes that Hutton's conduct was deliberately adopted in coordination with 18th Avenue to avoid Rhode Island and to defenestrate the power of its federal Court.  There is nothing unfair, unforeseeable, random or fortuitous about haling Hutton into the Court whose orders and authority it strategized to undermine.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

Last the Court must sift through the five gestalt factors.  Apart from the *de minimis* burden on Hutton of defending itself in Rhode Island, particularly where 18th Avenue and Hutton share the same counsel, all of the other factors – Rhode Island's interest in adjudicating the dispute, Little Kids' interest in the forum of its choice, the judicial system's interest in effective resolution and the common interests of sovereigns in promoting substantive policy – auger for the exercise of personal jurisdiction over Hutton in this Court.  See Ticket-Master N.Y., Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).  Rhode Island and this Court, as well as sovereigns in general, unquestionably share a substantial interest in supporting the authority of the Rhode Island judicial system to effectively protect the intellectual property of its citizens from infringement.  Moreover, efficient resolution of this dispute in a single forum as chosen by Little Kids can be achieved only in Rhode Island, in that, pursuant to the Settlement Agreement, Count X (which seeks entry of the escrowed final judgment based on 18th Avenue's indirect

violation through the actions of Hutton) can only be litigated in this Court.  ECF No. 34-2 at 3 ¶¶ 1, 3.

Based on the foregoing, I find that, using the *prima facie* method of review, Little Kids has sustained its burden of establishing that obliging Hutton to litigate this claim in Rhode Island would not offend traditional notions of fair play or substantial justice or be unreasonable.  See GRE Prop. Invs., LLC, 2020 WL 2616176, at *6.  Therefore, I find that this Court may exercise specific personal jurisdiction over Hutton and recommend that Hutton's motion to dismiss for lack of personal jurisdiction be denied without prejudice.  After discovery sheds more light on the relevant events, Hutton may challenge Little Kids' proffer again.[21]  If fact finding using the preponderance or intermediate method results in the rejection of the proffered jurisdictional facts, Hutton should then be dismissed from this case.

## III.    HUTTON'S MOTION TO DISMISS BASED ON IMPROPER VENUE

Related to Hutton's argument that the Court lacks personal jurisdiction over it is Hutton's attack on the District of Rhode Island as the venue for Little Kids' claims against it.[22]  Asserted pursuant to Fed. R. Civ. P. 12(b)(3), Hutton argues that it does not reside in Rhode Island and that Little Kids has failed to allege any events giving rise to the claims against it that occurred in Rhode Island.  ECF No. 55 at 10-12.  Therefore, it contends, venue cannot rest on either 28

---

[21] Thus, if fact finding ultimately leads to the conclusion that Hutton did not know about the Rhode Island litigation, and that its use of the Trademarks to offer the Infringing Bubble Toys for sale online was inadvertent and not part of a scheme to evade the authority of the Rhode Island Court, Hutton may be liable for infringement, but may not be sued for such infringement in the District of Rhode Island because it would not be subject to specific personal jurisdiction.

[22] Neither 18th Avenue nor Mr. Schwartz has joined Hutton's venue motion.  "Objections to venue are normally waived unless asserted in timely fashion."  Georcely v. Ashcroft, 375 F.3d 45, 49 (1st Cir. 2004); see Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund, 967 F.2d 688, 691-92 (1st Cir. 1992) (improper venue must be raised in a 12(b)(3) motion or in a party's first responsive pleading); Pratt v. Rowland, 769 F. Supp. 1128, 1132 (N.D. Cal. 1991) (defendant may not challenge venue on the ground that it is improper as to co-defendant).  Because 18th Avenue and Mr. Schwartz have not challenged venue, "the scope of Plaintiff's [burden] is necessarily limited to whether venue is proper as to [Hutton] and the claims against [it.]"  Print Data Corp. v. Morse Fin., No. 01-CV-44340(WGB), 2002 WL 1625412, at *5 (D.N.J. July 12, 2002).

U.S.C. § 1391(b)(1)[23] or § 1391(b)(2).[24]  Although "the plaintiff bears the burden of demonstrating that venue is proper with respect to each claim and each defendant," Get In Shape Franchise, Inc. v. TFL Fishers, LLC, 167 F. Supp. 3d 173, 195 (D. Mass. 2016), Little Kids bats aside Hutton's venue argument, asserting only that there can be "no question" that venue is proper here.  ECF No. 57 at 8.

Hutton's venue argument falls short because it ignores the "broader definition" of where an entity resides for venue purposes that Congress adopted in 2011, which is codified at 28 U.S.C. § 1391(c)(2).  TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1517, 1520 (2017).  Specifically, § 1391(c)(2) now provides:

> For all venue purposes – . . . an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.

28 U.S.C. § 1391(c)(2).  That is, as long as the Court determines that it has specific personal jurisdiction over Hutton with respect to each of the claims against it in this case, Hutton is deemed to reside in Rhode Island for venue purposes.  See generally Doyle v. Merz N. Am., Inc., 405 F. Supp. 3d 186, 194 (D. Mass. 2019) ("[b]ecause the Court has determined that it has personal jurisdiction over [entity defendant], [entity defendant] is deemed to reside in Massachusetts for purposes of venue").  Further, Hutton is the only defendant named on each of the claims against it.  Therefore, as to each such claim, the only named defendant is deemed to be a resident of Rhode Island, thereby satisfying the first venue prong, which permits a claim to be brought in "a judicial district in which any defendant resides, if all defendants are residents of

---

[23] Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).

[24] Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).

the State."  28 U.S.C. § 1391(b)(1); see Print Data Corp., 2002 WL 1625412, at *4 ("The

plaintiff must meet this burden as to each joined defendant, and must demonstrate that venue is

proper for each claim.") (emphasis added); Get In Shape Franchise, Inc., 167 F. Supp. 3d at 195

(same).

 Because venue in this District is appropriate for each claim asserted against Hutton, I

recommend that the Court deny Hutton's motion to dismiss based on improper venue.

## IV. RULE 12(b)(6) MOTIONS TO DISMISS OF 18th AVENUE, SCHWARTZ AND HUTTON

### A. Standard of Review

 To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)); Jefferson, 2020 WL 620247, at *1.  In considering whether plaintiffs claiming

injury caused by a surreptitious conspiracy have "nudged their claim[ ] across the line from

conceivable to plausible," Twombly, 550 U.S. at 547, "[i]t is acceptable to plead schemes

generally, as long as specific or representative examples of entities involved in the scheme are

also offered."  United States ex rel. Hernandez v. Team Fin., L.L.C., Civil Action No. 2:16-CV-

00432-JRG, 2020 WL 731446, at *7 (E.D. Tex. Feb. 13, 2020) (internal quotation marks

omitted).  Because "[c]onspiracies are normally kept secret," a complaint that is built on

circumstantial factual allegations may be viable as long as it is plausible.  Danielson v. Huether,

355 F. Supp. 3d 849, 869 (D.S.D. 2018) (citing Livers v. Schenck, 700 F.3d 340, 361 (8th Cir.

2012)).  In determining whether such a claim may proceed past the Fed. R. Civ. P. 12(b)(6) early

stage, the court should accept as true all factual allegations, make all reasonable inferences in

favor of the plaintiff, and refrain from any conjecture as to whether the conspiracy allegations

may prove deficient at the summary judgment or later stages; the properly pled facts need not rule out the possibility of independent action at the motion to dismiss stage.  Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 45, 47 (1st Cir. 2013).  For example, if the circumstantial factual allegations in the pleading support the inference that a party knew of a scheme and engaged in conduct consistent with such knowledge, as well as that such party's assistance was essential to the perpetration of the illegal conduct, the complaint is plausible and claims based on the scheme may proceed to discovery.  See generally Roche Diagnostics Corp. v. Shaya, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019).

In connection with a Fed. R. Civ. P. 12(b)(6) motion, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  Barkan v. Dunkin' Donuts, Inc., 520 F. Supp. 2d 333, 335-36 (D.R.I. 2007) (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).  However, courts may make an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Id. at 336 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  In this instance, the Court has restricted its review to the SASC and the documents referenced in it (such as the Settlement Agreement) and has taken judicial notice of the procedural travel of this case. The more expansive record relied on supra to resolve Hutton's jurisdictional and venue motions has been disregarded.

**B.**    **Analysis**

At the threshold of this analysis, the Court must acknowledge the reality that the SASC was drafted in haste, with the new allegations grafted onto the existing pleading resulting in a

26

work product that is confusing to follow and that lacks many of the specific factual allegations that Little Kids incorporated into its proffer in opposition to the Fed. R. Civ. P. 12(b)(2) motion.[25]   Seeking to capitalize on these weaknesses, Defendants' Fed. R. Civ. P. 12(b)(6) motions aim a blunderbuss at Little Kids' pleading.   When subjected to careful scrutiny, however, I find that all of their arguments fall wide of the mark.   Therefore, I recommend that all three Defendants' motions to dismiss be denied.

I begin the analysis by setting aside an argument that is not in issue at this early phase of the case.   All three Defendants point out that the Settlement Agreement's Release recites that 18th Avenue and Mr. Schwartz, as 18th Avenue's owner and chief executive officer, are released from all claims, known and unknown, up to the effective date (December 30, 2019).   ECF No. 34-2 at 4; ECF No. 56-1 at 5, 10-13, 19.   Hutton joins this aspect of the 18th Avenue/Schwartz motion, arguing that, to the extent that it ultimately is deemed to be an affiliate of 18th Avenue (which it denies), it may assert the Release based on the inclusion of 18th Avenue's "affiliates" among the protected entities.   ECF No. 56-1 at 12-13.   Therefore, Hutton contends, if Little Kids' claim against it is sustained, it is also entitled to the protection of the Settlement Agreement's sweeping Release.   Id.

The flaw in this argument as the foundation for Fed. R. Civ. P. 12(b)(6) dismissal is that Little Kids does not dispute its merits.   That is, Little Kids agrees that the Release operates to cut

---

[25] As noted *supra*, the facts related to the personal jurisdiction determination whether Hutton may be sued in the District of Rhode Island are the same facts that lie at the core of merits of the claims in the SASC.   For example, Little Kids' jurisdictional factual proffer included: specific facts evidencing 18th Avenue's pre-ligation duplicity in trying to continue the infringement despite having been caught selling the Infringing Bubble Toys (e.g., *supra* nn.5 & 6); specific facts evidencing 18th Avenue's post-litigation duplicity in providing an interrogatory answer that covered up the transfer of Top Right Toys to Hutton; and specific facts evidencing Mr. Knopfler's switch from running the Toys2Discover store (where Infringing Bubble Toys were sold after 18th Avenue assured Little Kids that they were not) to being employed by Hutton, which then began to offer the Infringing Bubble Toys for sale online.   These concrete facts are not plead in the SASC.   To the extent that the Court disagrees with my recommendation that the SASC, while less than artful, is nevertheless plausible, I alternatively recommend that the Court allow Little Kids an opportunity to amend by adding these facts to the pleading.

off its right to recover for conduct by 18th Avenue and Mr. Schwartz (and Hutton if it turns out

to be a true affiliate) that preceded the effective date in the Settlement Agreement; the SASC

references the Settlement Agreement and is based on the premise that "anything occurring after

the date of the settlement, December 30, 2019," is not released.  ECF No. 57 at 17.  While the

SASC may not be perfectly clear in articulating how the Release impacts the claims, it is crafted

to rely on the facts supporting pre-Release infringement by 18th Avenue and Mr. Schwartz for

background, including to establish Hutton's knowledge and participation in the scheme to

continue the infringement, but targets 18th Avenue and Mr. Schwartz for the events after

December 30, 2019.  While this limits the likely operative period as to 18th Avenue and Mr.

Schwartz, and possibly as to Hutton, to a tight span of time, it is enough to encompass Hutton's

post-Release infringing use of the Trademarks and marketing of the Infringing Bubble Toys, for

which the SASC alleges that 18th Avenue and Mr. Schwartz are legally responsible pursuant to

the Settlement Agreement and the doctrine of contributory infringement.  Thus, the SASC pleads

a plausible claim for recovery spanning the period from December 30, 2019, through (at least)

January 8, 2020, which is not barred by the Release.  Otherwise, the precise scope of what is

barred by the Release will be developed through discovery and resolved at summary judgment or

at trial.  See Ruiz-Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 255-56 (1st Cir. 2013)

(scope of release requires factual development that precludes resolution through a Rule 12(b)(6)

motion to dismiss); Massachusetts v. Bull HN Info. Sys., Inc., 143 F. Supp. 2d 134, 150-51 (D.

Mass. 2001) (scope of release is factual issue for trial).  Because the SASC does not purport to

sue for claims barred by the Release, with the facts and law bearing on the scope of precisely

what has been released to be developed, Defendants' argument based on the Release does not

justify Fed. R. Civ. P. 12(b)(6) dismissal.

I turn next to Hutton's motion to dismiss, which attacks Counts V-VIII because they rely on the foundational conclusory allegation in paragraph 73 of the SASC that Hutton and 18th Avenue are "alter egos."  SASC ¶ 73; ECF No. 55 at 13.  Citing Vucci v. Meyers Bros. Parking Sys. Inc., 494 A.2d 530, 536 (R.I. 1985), Hutton argues that "alter ego" is a legal term of art that must be supported by factual allegations sufficient to show that the two entities were "operated in so imbricated a manner" as to clear the high bar set for veil piercing.[26]  United Elec., Radio & Mach. Workers, 960 F.2d at 1095; see Doe v. Gelineau, 732 A.2d 43, 44 (R.I. 1999) (under Rhode Island law, "[w]hen it comes to piercing corporate veils, courts are loath to act like Vlad the Impaler").  Hutton contends that the SASC fails to plead the facts that are essential to render plausible the conclusory accusation that it and 18th Avenue are "alter egos."  ECF No. 55 at 14-15.

This argument fails despite the conclusory nature of the allegation in paragraph 73 of the SASC.  The claims against Hutton are not grounded in the narrowly cast theory that Hutton and 18th Avenue were operated as legal "alter egos" based on the indicia required to meet the strict test for veil piercing under whatever law may be applicable.  To the contrary, the SASC alleges broadly that Hutton and 18th Avenue had "some other close business relationship," speculating that they might be "alter egos," making plain that the nature of the relationship is unknown to Little Kids.  SASC ¶ 73.  What is material are the specific facts in the SASC that permit the inference reflected in paragraph 73 – these are sufficient to render plausible Little Kids' claim that the January 2019 transfer of Top Right Toys was not an arm's length transfer to a totally unrelated entity.  That is, the SASC's factual allegations permit the inference that 18th Avenue,

---

[26] Hutton's "alter ego" argument is built largely in reliance on Rhode Island cases.  If this analysis required the Court to examine the viability of a veil piercing claim, it is more likely that New York law would apply.  Because Little Kids is not seeking to pierce the corporate veil of either 18th Avenue or Hutton, the Court has not performed a choice of laws analysis.

Mr. Schwartz and Hutton waited until the TRO has lapsed and schemed together to have Hutton continue the infringement to facilitate 18th Avenue's evasion of the Rhode Island injunctions. Accordingly, I recommend that Hutton's Fed. R. Civ. P. 12(b)(6) challenge to Counts V-VIII be denied.[27]

Mr. Schwartz's Fed. R. Civ. P. 12(b)(6) motion boils down to the argument that Count IX should be dismissed for failure to state a claim because Little Kids' allegations against him are false, conclusory and speculative. While they may ultimately be proven false, at the Fed. R. Civ. P. 12(b)(6) stage, the Court must accept Little Kids' well-pled facts as true and examine whether they are sufficient to render the claim plausible, mindful that the essence of Count IX is the well-settled doctrine that "a corporate officer who directs, controls, ratifies, participates in or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1184 (11th Cir. 1994). Here, Little Kids marshals Mr. Schwartz's position at the helm and as owner of 18th Avenue, 18th Avenue's pre-litigation infringement using the Top Right Toys brand, 18th Avenue's transfer of that brand, with related promotional materials, artwork and packaging, to Hutton pursuant to a transaction consummated shortly after the TRO lapsed, and Hutton's post-Release offering of the Infringing Bubble Products for sale through Top Right Toys using features of the infringing advertising that had been used by 18th Avenue. E.g., SASC

---

[27] The Fed. R. Civ. P. 12(b)(6) motion filed by 18th Avenue and Mr. Schwartz makes what amounts to the same argument – that is, they contend that, because the SASC does not include factual allegations permitting the inference that 18th Avenue and Hutton failed to observe corporate formalities, it fails to state a claim sufficient to make them legally responsible for Hutton's infringing conduct, which is the only infringement committed after the effective date of the Release. ECF 56-1 at 14-17. This argument fails not only because the SASC has enough heft to plausibly accuse all three Defendants of colluding to continue the infringement after the Release's effective date, but also because the SASC has more than enough to plausibly sue 18th Avenue and Mr. Schwartz for contributory infringement as discussed infra. I recommend that this aspect of the 18th Avenue/Schwartz Fed. R. Civ. P. 12(b)(6) motion also should be denied.

¶¶ 19, 68-71, 76-79, 110, 112, 115.  Taking all of these specific factual allegations as true, I find that Count IX is adequate to unlock the door to discovery; I recommend that Mr. Schwartz's Fed. R Civ. P. 12(b)(6) motion to dismiss should be denied.

Finally, 18th Avenue's Fed. R. Civ. P. 12(b)(6) motion[28] argues vigorously that the claims against it fail to state a claim, including Count X, which seeks to enforce the Settlement Agreement's provision mandating that judgment for a fixed sum will enter if 18th Avenue, acting "directly or indirectly," markets or offers the Infringing Bubble Toys for sale.  ECF No. 34-2 at 3 ¶ 3.  The focus of 18th Avenue's argument is that it did not actually violate any injunction because the conveyance to Hutton occurred after the TRO lapsed and before the permanent injunction issued.  ECF No. 56-1 at 8.  After the Top Right Toys transfer, 18th Avenue argues that whatever infringing conduct may have occurred was committed entirely by Hutton, while 18th Avenue itself was helpless, unable to control Hutton's conduct.  Schwartz Decl. ¶ 22.

This argument misses the point.  Little Kids has not brought a motion for contempt. Rather, in suing 18th Avenue, Little Kids cites the Settlement Agreement and invokes the doctrine of contributory infringement as described, for example, in Coach, Inc. v. Sapatis, 27 F. Supp. 3d 239, 250 n.10 (D.N.H. 2014) ("entity may generally be held liable for contributory infringement if it fails to act once it has actual knowledge, has reason to know, or is willfully blind to the fact that it is supplying a service to one who is engaging in direct trademark infringement") (emphasis in original); see Inwood Labs, Inc. v. Ives Labs, Inc., 456 U.S. 844,

---

[28] Urging the Court to impose sanctions on Little Kids, 18th Avenue also argues that a fact finder might conclude that the sequence of rapidly unfolding events during December 2019 and January 2020 actually establishes that it was 18th Avenue that was Little Kids' unwitting catspaw, in that 18th Avenue signed the Settlement Agreement with its provision for judgment for a fixed sum in the event of indirect marketing of the Infringing Bubble Toys at the same time that Little Kids already knew all about the 18th Avenue/Hutton scheme for Hutton to indirectly continue 18th Avenue's infringement.  I do not recommend that sanctions be imposed; if discovery reveals merit to this argument, it can be revisited.

853 (1982) ("liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another").  In reliance on these bases for its claims, Little Kids alleges that, aware that the TRO was lapsing and that a permanent injunction had not yet entered, 18th Avenue, acting through Mr. Schwartz, and aided and abetted by Hutton, sought to and did evade the Court's injunctions and continued the infringement by transferring what was necessary to market and sell the Infringing Bubble Toys to Hutton, which continued after the effective date of the Release.  Indeed, 18th Avenue virtually concedes that Little Kids has plausibly alleged that 18th Avenue is a contributory infringer in that it failed to bother to delete the Infringing Bubble Toys (clearly marked with the Trademarks) from the online marketing images that it transferred to Hutton, resulting in Hutton's confusing use of Little Kids' Trademarks in its international Amazon marketing and Top Right Toys postings.  Finding these claims to be plausible, I recommend that the Court deny 18th Avenue's motion to dismiss.

At bottom, I find that Little Kids has plausibly alleged: (1) that 18th Avenue intentionally infringed the Trademarks by acquiring, seeking to sell and selling the Infringing Bubble Toys that carried the Trademarks, resulting in consumer confusion; (2) that, when it was caught, 18th Avenue tried to continue the infringement by offering the Infringing Bubble Toys for sale at Toys2Discover, its Brooklyn store; (3) that, when Little Kids discovered and purchased Infringing Bubble Toys at Toys2Discover, the Rhode Island litigation was filed and the Rhode Island TRO issued; (4) that 18th Avenue waited until the TRO lapsed and then (acting through Mr. Schwartz) transferred to Hutton the Top Right Toys brand and the online information needed to continue the infringement; (5) that, in transferring the materials related to the Top Right Toys brand to Hutton, 18th Avenue included the online images of the Infringing Bubble Toys (marked with the Trademarks) for use by Hutton, expecting that Hutton would use them; and (6) that

Hutton, an entity with a relationship with 18th Avenue and having engaged Mr. Niro, who was acutely aware of the allegations of infringement, the Rhode Island litigation, the Rhode Island TRO, as well as the likelihood of the Rhode Island permanent injunction, knowingly used what it acquired from 18th Avenue to continue the infringement even after the Settlement Agreement became effective and the permanent injunction issued.  This is enough for the SASC to survive Fed. R. Civ. P. 12(b)(6) scrutiny.  Therefore, I recommend that the motions to dismiss for failure to state a claim filed by all three Defendants should be denied.

## V.   CONCLUSION

Based on the foregoing, I recommend that the Court deny both the motion to dismiss brought by Hutton (ECF No. 54) and the motion to dismiss brought by 18th Avenue and Mr. Schwartz (ECF No. 56).  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 10, 2020